UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

**FILED**

NOV - 3 2004

LARRY W. PROPES, CLERK
COLUMBIA, S. C.

| | |
|---|---|
| David W. Bibeau, as Personal Representative of the Estate of Katherine Ann Kurtz-Bibeau, )<br><br>Plaintiff, )<br><br>v. )<br><br>James Michael Shortt, M.D.; Health Dimensions, LLC; Congaree Pharmacy, Inc.; George Dawn, R.Ph. and J. H. "Buster" Phillips, Jr., R. Ph., )<br><br>_____Defendants._____ ) | **AMENDED COMPLAINT**<br>(Jury Trial Demanded) |

Plaintiff, complaining of Defendants, will show unto the Court as follows:

## JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(a)(1). These wrongful death and survival actions arise under S.C. Code §§ 15-51-10, et seq., 15-5-90, and the common law of South Carolina.

## THE PARTIES

2. Plaintiff is a citizen and resident of the State of Minnesota and is the duly appointed Personal Representative of the Estate of his late wife, Katherine Ann Kurtz-Bibeau (hereafter "Ms. Bibeau"), pursuant to an order of the Washington County Minnesota District Court.

3. Defendant James Michael Shortt (hereafter "Defendant Shortt") is a citizen and resident of the State of South Carolina and is a medical doctor licensed by the South Carolina Board

16

of Medical Examiners. As a licensed physician, Defendant Shortt has the duty to exercise due care and to practice within the standards of care of the medical profession.

4. Defendant Health Dimensions, LLC, is a South Carolina Limited Liability Corporation with its principal place of business in Lexington County, South Carolina. At all times relevant herein, Defendant Shortt was an agent and/or employee of Defendant Health Dimensions, LLC, and was operating within the scope of his duties when delivering all medical care referenced herein to Ms. Bibeau.

5. Defendant Congaree Pharmacy, Inc. (hereafter "Congaree Pharmacy"), is a South Carolina corporation engaged in the practice of pharmacy by and through registered pharmacists licensed under the laws of the State of South Carolina. As such, Defendant Congaree Pharmacy and its agents and/or employees have the duty to exercise due care and practice within the standards of care of the pharmacy profession. Upon information and belief, Defendant Congaree Pharmacy, Inc., has its principal place of business in Lexington County, South Carolina.

6. Defendant George Dawn, R.Ph. (hereafter "Defendant Dawn") is a citizen and resident of the State of South Carolina and is a registered pharmacist licensed by the South Carolina Board of Pharmacy. As a registered pharmacist, Defendant Dawn has a duty to exercise due care, to comply with applicable statutory and regulatory provisions and to practice within the standards of care of a registered pharmacist. Upon information and belief, at all times relevant herein, Defendant Dawn was an agent and/or employee of Defendant Congaree Pharmacy and operated under the supervision and control of the pharmacist in charge, Defendant J.H. "Buster" Phillips, Jr.

7. Defendant J.H. "Buster" Phillips, Jr., R.Ph. (hereafter "Defendant Phillips") is a citizen and resident of the State of South Carolina and is a registered pharmacist licensed by the

2

South Carolina Board of Pharmacy. As a registered pharmacist, Defendant Phillips has a duty to exercise due care, to comply with applicable statutory and regulatory provisions and to practice within the standards of care of a registered pharmacist. Upon information and belief, at all times relevant herein, Defendant Phillips was an agent and/or employee of Defendant Congaree Pharmacy and served as its pharmacist in charge.

## FACTUAL BACKGROUND

8.  Ms. Bibeau, then 52 years of age, had been diagnosed with multiple sclerosis and began investigating natural and alternative treatments for her disease. Ms. Bibeau, who was residing in Minnesota, learned of treatments promoted by Defendant Shortt in his clinic, Health Dimensions, LLC, for the treatment of multiple sclerosis. Defendant Shortt held himself out as a "longevity physician." The centerpiece of Shortt's treatment for Ms. Bibeau was intravenous administration of hydrogen peroxide, referred to euphemistically by Shortt as "oxidative therapy."

9.  The risks of severe injury and death associated with the ingestion of hydrogen peroxide are well documented in the medical and pharmacy literature. The intravenous administration of hydrogen peroxide has been associated with severe side effects, including acute hemolytic crisis, air embolism, hemorrhage, and death.

10. Despite these well documented risks of hydrogen peroxide ingestion, Defendant Shortt proceeded to treat Ms. Bibeau's multiple sclerosis with intravenous administration of hydrogen peroxide. Upon information and belief, patients with chronic illnesses from across the United States and even Europe came to Defendants' clinic in West Columbia, South Carolina, for treatment.

11. Ms. Bibeau was initially seen by Defendant Shortt on October 21, 2003, and underwent a battery of diagnostic studies in search of an alleged virus or bacteria which Defendant Shortt contended was causing his patient's multiple sclerosis. Although Defendant Shortt was unable to identify any such virus or bacteria from his laboratory studies, he nevertheless recommended intravenous hydrogen peroxide therapy to treat Ms. Bibeau's multiple sclerosis. Defendant Shortt told Ms. Bibeau that the hydrogen peroxide would be very good at killing this unknown bacteria or virus allegedly causing her multiple sclerosis.

12. In the course of recommending this therapy to Ms. Bibeau, Defendant Shortt failed to disclose the material risks of this treatment, including hemolytic crisis, air embolism, hemorrhage, and death. By failing to disclose the material risks of the treatment, Defendant Shortt failed to obtain informed consent from Ms. Bibeau.

13. Upon information and belief, Defendant Shortt submitted to Defendant Congaree Pharmacy a prescription drug order for 3% hydrogen peroxide for intravenous ingestion by Ms. Bibeau. Upon information and belief, Defendants Congaree Pharmacy and Dawn packaged and labeled the hydrogen peroxide and dispensed it to Defendant Shortt for administration to Ms. Bibeau. The prescription was packaged, labeled and dispensed under the supervision of Defendant Congaree Pharmacy's pharmacist in charge, Defendant Phillips. Defendants dispensed the hydrogen peroxide notwithstanding the fact the government approved label for 3% hydrogen peroxide provides for "external use only" and the well-documented risks of adverse reactions and potential fatal complications associated with ingestion of hydrogen peroxide. Upon information and belief, Defendants Congaree Pharmacy, Dawn and Phillips failed to warn Ms. Bibeau of the risks associated with hydrogen peroxide ingestion, perform a drug regimen review, make a determination of

4

therapeutic appropriateness, consult with the prescriber regarding the potential life-threatening complications, interpret and assess the potential adverse reactions or side effects associated with hydrogen peroxide ingestion, or provide pharmacy care to Ms. Bibeau.

14.     Ms. Bibeau received the intravenous hydrogen peroxide compounded by Defendant Congaree Pharmacy, Dawn and Phillips in the offices of Defendants Shortt and Health Dimensions on March 9, 2004. Ms. Bibeau was medically stable prior to the administration of intravenous hydrogen peroxide and had no prior history of an underlying bleeding disorder or air embolism. Ms. Bibeau complained of abdominal pain and nausea following the administration of intravenous hydrogen peroxide. She returned two days later, March 11, 2004, with signs and symptoms of a bleeding disorder. This included bruising on her hand and arm despite no history of trauma, abnormal amounts of blood in her urine, and severe vaginal bleeding. She was also documented feeling weak, which is another sign consistent with depletion of blood volume.

15.     Despite these changes following the administration of intravenous hydrogen peroxide, no medical evaluation was conducted to determine whether Ms. Bibeau was experiencing complications from the therapy provided by Defendant Shortt two days earlier. This would have included, but not necessarily limited to, an assessment of the patient's blood volume and platelet status by ordering one of the most common laboratory tests in medicine, a complete blood count. Further, to the extent Defendant Shortt was unwilling or unable to conduct a competent medical evaluation in response to Ms. Bibeau's troubling new signs and symptoms following intravenous administration of hydrogen peroxide, Defendant Shortt could have referred her to another physician or to a local emergency room to conduct such a medical evaluation. Defendant Shortt conducted no further evaluation of Ms. Bibeau, provided her no treatment for her evolving medical conditions

5

arising secondary to the intravenous administration of hydrogen peroxide, and made no referral to another physician.

16. Emergency medical services were summoned on March 12, 2004, when Ms. Bibeau was noted by family members to be weak and confused with evidence of widespread bruising without a history of trauma. Ms. Bibeau was initially treated at Providence Hospital Northeast and then transferred to the primary campus of Providence Hospital shortly thereafter. An initial evaluation revealed a profoundly low platelet count and multi-organ failure. Despite valiant and aggressive efforts by her treating physicians, Ms. Bibeau continued to decline and ultimately failed to respond to treatment. She ultimately died on March 14, 2004, with diagnoses including septic shock, disseminated intravascular coagulation, and multi-organ failure. The death summary also pointedly addressed the role of Defendant Shortt's "alternative intravenous treatment" in Ms. Bibeau's death. A subsequently performed autopsy determined that Ms. Bibeau's death was the result of "cardiac arrest due to systemic shock and DIC due to iatrogenic infusion of hydrogen peroxide." The pathologist further noted in the autopsy report's summary that "[t]here is no legitimate use for the infusion of hydrogen peroxide in the current medical literature."

17. Plaintiff demands a trial by jury.

## DEVIATIONS FROM THE STANDARDS OF CARE

18. Defendant Shortt and Health Dimensions, LLC were negligent, grossly negligent, negligent *per se*, wilful, wanton, and reckless in the following particulars, with each subparagraph sufficient to support the relief sought:

    a. administration of intravenous hydrogen peroxide therapy;

    b. failure to disclose to the patient the material risks of intravenous hydrogen

peroxide therapy;

c. failure to obtain a lawful informed consent for treatment;

d. utilization of a medical therapy, intravenous hydrogen peroxide therapy, which is medically contraindicated and documented to cause severe injury and/or death;

e. failure to respond to signs and symptoms of acute hemolytic crisis;

f. failure to work-up signs and symptoms consistent with complications from the intravenous administration of hydrogen peroxide;

g. failure to order a complete blood count at the March 11, 2004, office visit;

h. failure to treat Ms. Bibeau for her acute hemolytic crisis and other complications from the administration of intravenous hydrogen peroxide or to refer Ms. Bibeau to another physician for such treatment; and

i. failure to exercise the due care of a reasonable and prudent physician in like circumstances.

19. Defendants Congaree Pharmacy, Inc., George Dawn, R.Ph. and J.H. "Buster" Phillips, Jr., R.Ph. were negligent, grossly negligent, negligent *per se*, wilful, wanton, and reckless in the following particulars, with each subparagraph sufficient to support the relief sought:

a. filling and dispensing a prescription for 3% hydrogen peroxide for intravenous ingestion;

b. failing to warn Ms. Bibeau of the risks of severe and potential fatal complications associated with hydrogen peroxide ingestion;

c. failing to provide a drug regimen review;

7

    d.    failing to provide pharmacy care;

    e.    failing to make a determination of therapeutic appropriateness;

    f.    failing to interpret and assess the prescription order for potential adverse reactions or side effects;

    g.    dispensing hydrogen peroxide for human ingestion when the government approved label provided for "external use only;" and

    h.    failing to exercise due care in the professional practice as a pharmacist.

## DAMAGES

20. As the direct and proximate result of the Defendants' negligence described above, Ms. Bibeau experienced, prior to her death, conscious pain and suffering, emotional distress, and medical expenses. Ms. Bibeau's estate also incurred funeral expenses.

21. As the direct and proximate result of the Defendants' negligence described above, Ms. Bibeau's statutory heirs have experienced mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, and deprivation of Ms. Bibeau's society, including her experience, knowledge, and judgment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays unto the Court for the following relief against all Defendants:

    A.    Actual damages in an appropriate amount in excess of $75,000.00.

    B.    Punitive damages in an appropriate amount; and

    C.    Such other and further relief as the Court deems just and proper.

***SIGNATURE PAGE FOLLOWS***

GERGEL, NICKLES & SOLOMON, P.A.

BY: _____
Richard Mark Gergel
Fed. I.D. #1027
P. O. Box 1866
1519 Richland Street
Columbia, South Carolina 29202
(803) 779-8080

ATTORNEYS FOR PLAINTIFF

November 3, 2004

9