**FILED**

FEB 18 2005

LARRY W. PROPES, CLERK
COLUMBIA, S.C.

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| David W. Bibeau, as Personal Representative of the Estate of Katherine Ann Kurtz-Bibeau, </br></br>Plaintiff, </br></br>v. </br></br>James Michael Shortt, M.D.; Health Dimensions, LLC; Congaree Pharmacy, Inc.; George Dawn, R.Ph. and J. H. "Buster" Phillips, Jr., R. Ph., </br></br>Defendants. | ) </br>) </br>) </br>) </br>) </br>) **PLAINTIFF'S MEMORANDUM IN** </br>) **OPPOSITION TO DEFENDANTS' MOTION** </br>) **FOR PROTECTIVE ORDER** </br>) **AND TO SEAL DOCUMENTS** </br>) </br>) </br>) </br>) </br>) |

## NATURE OF THE CASE

This action arises out of what Richland County Coroner, Gary Watts, has officially declared to be a "homicide," the death of Katherine Ann Kurtz-Bibeau ("Ms. Bibeau") following the intravenous administration of hydrogen peroxide. (Exhibit A) This highly unconventional, contraindicated and dangerous treatment was prescribed by Defendant James Michael Shortt and dispensed by Defendants Congaree Pharmacy, J.H. "Buster" Phillips and George Dawn, despite the warning on the official label for hydrogen peroxide that it was for "external use only" and reports in articles and numerous peer review medical journals and other respected sources that the injection of hydrogen peroxide can lead to devastating blood coagulation disorders, gas emboli and death. This is further confirmed in the official autopsy report of Ms. Bibeau issued by Richland County Medical Examiner, Dr. Clay Nichols, in which he stated "there is no legitimate use for the infusion of hydrogen peroxide..." (Exhibit B)

Plaintiff's claims in this action focus both specifically on the negligent and unprofessional conduct of Defendants in providing Ms. Bibeau intravenous hydrogen peroxide and broadly on the practices and procedures of Defendants in utilizing sham, illegal and/or fraudulent medical methods and treatments on their often desperate and vulnerable patients. These highly dubious practices include such medical shams as ordering obviously invalid and unapproved lyme disease tests from an unlicensed Florida laboratory to justify expensive and unneeded prescriptions and treatment; guiding a desperate patient to an illegal and potentially fatal black market drug, Laetril; and prescribing dangerous and illegal steroids, needles and syringes to body builders and professional athletes.

Since these Defendants continue to practice despite the finding of "homicide" by Coroner Watts and ongoing efforts by the South Carolina Board of Medical Examiners to revoke Defendant Shortt's medical license, the Plaintiff has attempted to warn the public of the dangers and irresponsible practices of these Defendants. It is Plaintiff's hope that his wife's tragic death can be an example and warning to others, so that no other husband or child will suffer the devastating grief and loss experienced by Mr. Bibeau and his sons. Recently, Mr. Bibeau and Plaintiff's counsel appeared on an episode of "60 Minutes" to warn the public of the dangers associated with Defendant Shortt's medical practices. Defendant Shortt also appeared on the same "60 Minutes" program and advocated the use of his unconventional and dangerous therapies.

At the initiation of this litigation, Plaintiff served upon Defendants initial discovery requests. Defendants Phillips and Dawn responded on January 17, 2005, by providing interrogatory responses and producing various documents. (Exhibit C) These included an affidavit by State Law Enforcement Investigator David Lawrence which supports a comprehensive search warrant executed

by SLED on Congaree Pharmacy on September 27, 2004, and a document titled "Physician Utilization Report for Congaree Pharmacy" (hereafter "Physician Utilization Report"). The SLED affidavit contains information from a confidential source indicating widespread and systematic illegal and dangerous medical practices of Defendants Shortt and Congaree Pharmacy (Exhibit D).

The Physician Utilization Report (Exhibit E, filed under seal) was explicitly referred to by name in the separate discovery responses of Defendants Dawn and Phillips, and no reference was made, either explicitly or implicitly, indicating any intention to redact or make confidential any portion of the document. Moreover, the document was delivered in its original form, with no redaction, with the discovery responses. (See, Exhibits C and E) The production of the Physician Utilization Report in its original, unredacted form, was unquestionably intentional and not inadvertent.

The Physician Utilization Report is a highly revealing and devastating document that confirms the validity of the allegations put forth by Plaintiff as well as those asserted by State Law Enforcement Investigator David Lawrence in support of the executed search warrant. Some of the most notable and relevant information contained in the Physician Utilization Report include the following:

1. Defendant Congaree Pharmacy manufactured hydrogen peroxide for human ingestion in bulk for Dr. Shortt's medical practice, Health Dimensions, without prescriptions for individual patients. This manufacturing was undertaken without the required federal and state manufacturing licenses and without FDA approval to manufacture hydrogen peroxide for intravenous use. The dispensing without a prescription for a specific patient is also a violation of the State Pharmacy Act.

2. This widespread dispensing of steroid, steroid enhancers, syringes and needles to professional athletes, in violation of federal and state law.

3. The prescribing and dispensing by these Defendants of high dose steroids for long periods of time to patients, which, in amount, length and mode of delivery, were almost certainly medically contraindicated and extraordinarily dangerous for the patients.

4. The prescriptions detailed in the thirteen page Physician Utilization Report, taken in their totality, demonstrate a common scheme and plan by these Defendants to engage in reckless, illegal and/or exploitive medical practices. The degree of collaboration between the pharmacists and the physician demonstrated by the Physician Utilization Report reveals that the provision of intravenous hydrogen peroxide to Ms. Bibeau was part of a larger and more comprehensive unlawful scheme between the Defendant physician and the Defendant pharmacy.

5. The Physician Utilization Report reveals that even after the seizure of business records in Defendants' offices on September 27, 2004 by SLED, Congaree Pharmacy continued to dispense steroids to patients of Dr. Shortt.

**DEFENDANTS' MOTION**

By motion dated February 2, 2005, counsel for Congaree Pharmacy, Inc., George Dawn, and J.H. "Buster" Phillips, seek the return of a thirteen page "Physician Utilization Report" produced voluntarily in response to Plaintiff's first set of discovery requests. Defendants seek to substitute a single page that contains two entries relating to prescriptions issued on a single day to a single patient. (Exhibit F) As mentioned previously, the Physician Utilization Report was produced by

Defendants without objection on January 17, 2005 in response to Plaintiff's First Interrogatories and Requests for Production of Documents. The report is specifically identified as one of nine documents responsive to Plaintiff's Request No. 2 and is incorporated in response to Plaintiff's Request Nos. 3, 15 and 16 in the separate answers of Defendants Dawn and Phillips (Exhibit C).

The Physician Utilization Report obviously falls squarely within the scope of discovery in this action and was properly produced by Defendants. Now, having appreciated that the document confirms the presence of widespread criminality and reckless practices by Defendants, this motion is a desperate effort to retrieve this highly damaging document on the dubious claims of privilege and/or inadvertence. As set forth below, the document was intentionally and properly produced and any claims of privilege have been waived by the production in discovery.

## LEGAL ARGUMENT

I. **Defendants have failed to establish a legitimate basis for protecting the Patient Utilization Report provided to Plaintiff.**

   A. **Defendants have failed to establish that HIPAA prohibits production of the report provided to Plaintiff.**

Defendants contend that because the report in question contains the names of individuals who received medication prescribed by Dr. Shortt, it is protected from disclosure by the Health Insurance Portability and Accountability Act of 1996 (HIPAA). This is a misreading of the statute. As a preliminary matter, HIPAA does not preclude disclosure of patient specific information. Rather, HIPAA specifically provides that a covered entity may disclose "protected health care information" in the course of any judicial proceeding in response to a discovery request if, among other things, the covered entity makes reasonable effort to provide notice to the affected individuals. See generally, 45 C.F.R. § 164.512(e)(1)(vi); 164.514(d)(4)(iii) Furthermore, HIPAA

5

does not protect health care information from production in response to a lawful search warrant. 45 C.F.R. § 164.514(d)(3)(ii).

In this case, it is far from clear that the information contained in the report constitutes "protected health care information" as defined in HIPAA. By definition, such information "Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual." 42 C.F.R. § 160.103("health care information"). In this case, the only information provided in reference to named individuals is the medication name, form, strength and quantity filled. The report does not reveal any "past, present or future physical or mental health or condition of an individual." Rather, the report appears to be a typical, routine, business record. Moreover, even if the document were subject to HIPAA, the proper procedure would be to produce the obviously discoverable document pursuant to a protective order, rather than to suppress this highly probative document.

### B.     Defendants have failed to establish any common law basis for protecting the report provided to Plaintiffs.

In addition to HIPAA, Defendants assert that the report is privileged as an attorney/client communication. This is obviously without merit. There is nothing on the face of the document to suggest the presence of an attorney/client privilege. See, generally, S.C. State Highway Department v. Booker, 200 S.C. 245, 195 S.E.2d 615 (1973)(attorney/client privilege does not extend to reports and other things not prepared by the attorney). To the contrary, the document appears to be a business record maintained by the Defendants. It is beyond dispute that the mere delivery of such record into the hands of an attorney does not invoke any privilege. See, Upjohn Co.

v. United States, 449 U.S. 383, 395-396 (1981)(protection of privilege extends only to communications, not facts); In re: Gabapentin Patent Litig., 214 F.R.D. 178, 186 (D.N.J. 2003)(delivering document to an attorney does not create attorney work product or attorney/client privilege); Guzzino v. Felterman, 174 F.R.D. 59, 61 (W.D. La. 1997)(documents not protected by delivery to attorney). Accordingly, Defendants have failed to satisfy the burden of establishing that the report qualifies for protection under the attorney/client privilege. See, United States v. Tedder, 801 F.2d 1437, 1441 (4th Cir. 1986)(privilege is strictly construed and the proponent of the privilege must prove its applicability).

Defendants further assert that the drug records of third parties are not relevant to Plaintiff's claims, citing Durham v. Vinson, ___ S.C. ___, 602 S.E.2d 760 (2004). As a preliminary matter, Durham does not speak to discovery issues. Instead, it addresses a physician's alleged inappropriate prescription of Valium to the daughter of a malpractice plaintiff. The underlying claim against the doctor arose from a surgical procedure, not the improper prescription or administration of drugs. By contrast, issues in this action include an assertion by Plaintiff that the reckless and irresponsible practice of providing intravenous hydrogen peroxide was part of a larger scheme by Defendants to prey upon their desperate and vulnerable patients. In this context, any evidence which shows pattern of such conduct by the Defendants is clearly relevant to Plaintiff's claims.[1]

### C.  Defendants have failed to establish that excusable "inadvertence" supports protection of the report provided to Plaintiff.

Defendants contend that delivery of the report to counsel for Plaintiff was "inadvertent". In making this assertion, however, Defendants completely ignore their burden of

---

[1] Defendants also offer cases from other jurisdictions which are based on state law or pre-HIPAA considerations. None of these cases have any bearing on the issue before the court.

establishing the availability of this narrow basis for protecting information produced during discovery. As a condition for any protective order based upon alleged inadvertence, the moving party must establish not only that disclosure was unintentional, it must satisfy the court "that it had taken adequate precautions to protect against disclosure". Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, 116 F.R.D. 46, 48 (M.D.N.C. 1987) Based upon Fourth Circuit precedent, Parkway Gallery identified five factors to be considered in determining whether a document has lost a claimed privilege through inadvertent disclosure. These factors are:

1. The reasonableness of the precautions taken to prevent the inadvertent disclosure in view of the extent of the document production;

2. The number of inadvertent disclosures;

3. The extent of the disclosure;

4. Any delay and measures taken to rectify the disclosure;

5. Whether the overriding interests of justice would or would not be served by relieving a party of its error.

116 F.R.D. at 50.

Generally, inadvertent production of documents pursuant to Rule 34 waives any privilege. Accordingly, it is incumbent upon the disclosing party to establish "extraordinary situations such as expedited discovery or massive document exchanges" to qualify for any protection. Id. Here, as in Parkway Gallery, the Defendants' alleged inadvertence cannot withstand judicial scrutiny. For example, the report produced by Defendants is identified specifically in its response to discovery. Additionally, the report comprises thirteen of only sixty-two pages produced by Defendants in the ordinary course of responding to discovery. Neither the volume nor the timing of discovery in this case establish extraordinary circumstances sufficient to support Defendants' request for protection.

Furthermore, the disclosure in this case was "complete" and these same materials have apparently been provided to other parties, including law enforcement. In this context, delivery of the report in response to discovery waived any subsequent claim of privilege. See, In re: Grand Jury Proceedings, 727 F.2d 1352 (4th Cir. 1984)(privilege must be "strictly confined to the narrowest possible limits" so as not to impede full and free discovery of the truth); Federal Deposit Insurance Corporation v. Marine Midland Realty Credit Corporation, 138 F.R.D. 479 (E.D.V.A. 1991)(waiver of privilege); Ciba-Geigy Corporation v. Samdoz, Limited, 916 F.Supp. 404 (D.N.J. 1995)(small size of production and identification of documents demonstrated waiver of any privilege); Scott v. Glickman, 199 F.R.D. 174 (E.D.N.C. 2001)(absence of lengthy document review and time constraints precluded inadvertent disclosure claim).

Perhaps aware of their inability to satisfy the criteria for protecting the report, Defendants make no effort to address the factors established in this Circuit for assessing an inadvertent disclosure claim. Moreover, having failed to establish inadvertence, Defendants cannot credibly advance their arguments that the report should be withdrawn from review in order to protect third parties. As Judge Russell stated in In re: Grand Jury Proceedings, a claim of privilege "impedes [the] full and free discovery of the truth and is in derogation of the public's right to every man's evidence [and] it is not favored by the federal courts." 727 F.2d at 1355.

**II.     Defendants have failed to establish an ethical violation by Plaintiff's counsel by disclosing the contents of the Physician Utilization Report as a means of warning the public of a known danger.**

Having intentionally produced to Plaintiff the Physician Utilization Report without a request for a protective order or any notice of a claim of confidentiality, Defendants now contend that

Plaintiff's counsel has acted unethically in publicly disclosing the document as a means of warning the public of the dangers associated with Defendants' medical practices and procedures. Plaintiff's counsel vigorously denies any improper conduct. Indeed, South Carolina's Code of Professional Responsibility, found that South Carolina Appellate Rule 407, specifically provides that a lawyer may make public statements during the pendency of a civil action where such disclosure constitutes "a warning of danger concerning the behavior of a person involved, when there is a reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest..." S.C. Appellate Court Rule 407, 3.6(b)(6). The Reporter's comments to this rule further provide as follows:

> [T]here are vital social interests served by the free dissemination of information about events having legal consequences and about legal proceedings themselves. The public has a right to know about threats to its safety and measures aimed at assuring its security.

The comments go on to provide that the exceptions provided under Rule 3.6, including the public warning exception, relate to "matters about which a lawyers statements would not ordinarily be considered to present a substantial likelihood of material prejudice, and should not in any event be considered prohibited..." (Exhibit G) Similarly, the fair trial directives of this Court, even in criminal matters, do not prohibit extrajudicial statements which are intended to warn the public of any danger or to aid in the investigation. Local Criminal Rule 57.II.02(B)(4),(5).

In light of the risk of death and serious bodily injury posed by Defendants' dangerous and exploitive medical practices and procedures, and Defendant Shortt's continued practice of medicine, despite efforts by the State Board of Medical Examiners to revoke his license, there is a strong, compelling public interest in warning the public of Defendants' conduct and practices. In fact, it can

be said that a lawyer in possession of such knowledge of danger to the public has no higher duty than to warn of this known danger. The Defendants' efforts to manipulate the rules of this Court to suppress the public disclosure of this vital information is inconsistent with the letter and spirit of applicable and controlling rules.

It is "well established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public". Phillips v. General Motors Corp., 307 F.3d 1206, 1210 (9th Cir. 2002) Accordingly, a party seeking a protective order must show specific prejudice or harm that will result if the order is not granted. "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003). In this case, Defendants did not seek a protective order prior to delivering the report to Plaintiff, and no objection to the disclosure of this information was asserted by Defendants. In this context, the Defendants "broad allegations of harm" are clearly too little and too late.

Defendants' assertion that counsel for Plaintiff has or will use the report in question to compel settlement or taint the jury pool is both insulting and specious. At no time has the Plaintiff or Plaintiff's counsel issued any "threat" or remotely implied that the content of the report is for sale. The Plaintiff looks forward to a full and fair litigation of his claims, Defendants' unwarranted speculation to the contrary.[2]

---

[2] Any concern regarding the availability of a fair trial may be addressed in pre-trial proceedings or at *voir dire*. At this time, Defendants cannot reasonably assert that every potential juror has been prejudiced by public inquiry regarding their drug dispensing practices. U.S. v. Higgs, 353 F.3d 281, 307-308 (4th Cir. 2003)(allegation of impartial jury, in a criminal case, to be addressed at by the trial judge at *voir dire*).

11

## CONCLUSION

For the reasons set forth above, the Defendants have failed to establish a protectable interest in the recovery or withholding of the Physician Utilization Report delivered to Plaintiff. Accordingly, Defendants' motion should be denied.

GERGEL, NICKLES & SOLOMON, P.A.

BY: _____
Richard Mark Gergel
Fed. I.D. #1027
W. Allen Nickles, III
Fed. I.D. #2541
P. O. Box 1866
1519 Richland Street
Columbia, South Carolina 29202
(803) 779-8080

ATTORNEYS FOR PLAINTIFF

Columbia, South Carolina
February 18, 2005