UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| DAVID W. BIBEAU, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF KATHERINE ANN KURTZ-BIBEAU, <br><br>　　　　　Plaintiff, <br><br>v. <br><br>JAMES MICHAEL SHORTT, M.D.; HEALTH DIMENSIONS, LLC; AND CONGAREE PHARMACY, INC., GEORGE DAWN, R.Ph., And J. H. "BUSTER" PHILLIPS, JR., R.Ph., <br><br>　　　　　Defendants. | C/A No. 3:04-22306-10 <br><br> **MEMORANDUM IN SUPPORT OF MOTION TO STAY THE CASE OR IN THE ALTERNATIVE TO STAY DISCOVERY** |

## I.　NATURE OF THE CASE

This is a wrongful death medical malpractice and professional negligence case arising out of the intravenous administration of .03% hydrogen peroxide solution to Plaintiff. The hydrogen peroxide compound solution was allegedly administered by Dr. James Michael Shortt. The compound was allegedly provided to Dr. Shortt by Congaree Pharmacy, Inc., George Dawn, R.Ph. and J.H. "Buster" Phillips (referred to hereafter collectively as "Congaree"). Plaintiff alleges that the administering of the compound by Shortt was improper and that it was improper for Congaree to provide the compound to Shortt. All Defendants deny liability.

## II.　STATEMENT OF THE FACTS

In 2001, Katherine Ann Kurtz-Bibeau, a medical technologist with the Veterans Administration Hospital in St. Paul, Minnesota, was diagnosed with multiple sclerosis. (Complaint ¶ 8). As her health deteriorated despite the best efforts of her doctors, she began investigating alternative treatments for her disease. *Id.* In her search for alternative treatments

she discovered Dr. Shortt. *Id.* Dr. Shortt offered various alternative treatments for Kurtz-Bibeau, including a type of oxidative therapy wherein hydrogen peroxide is administered intravenously into the patient. *Id.* Shortt saw Kurtz-Bibeau initially on October 21, 2003, (Complaint ¶ 11). She returned to Columbia, South Carolina and received an intravenous injection of hydrogen peroxide on March 9, 2004. (Complaint ¶ 14). She returned for a second treatment on March 11, 2004, but received an intravenously administered treatment other than hydrogen peroxide. Kurtz Bibeau was hospitalized on March 12, 2004 and died March 14, 2004. (Complaint ¶ 16).

Kurtz-Bibeau's death certificate provides the cause of death to be cardiac arrest, systemic shock and DIC, and Iatrogenic Infusion of Hydrogen Peroxide per Coroner Gary Watts 9-9-04. (See Death Certificate attached as Exhibit A).

It is alleged that Congaree provided the 3% hydrogen peroxide compound to Dr. Shortt that was administered to Kurtz-Bibeau. (Complaint ¶ 13). A search warrant was executed by SLED of Congaree in September 2004 and documents pertaining to hydrogen peroxide and other drugs were taken pursuant thereto.

The United States Attorney's office has been investigating Dr. Shortt and Congaree for the provision and administration of anabolic steroids. In fact, attorneys from the U.S. Attorney's office attended a hearing in this case that was held last month. The Defendants are reportedly targets of a grand jury investigation pertaining to their involvement in the supplying and administering of steroids to athletes. The Defendants are unaware whether other charges are being contemplated. Although the civil Complaint does not mention any drug other than hydrogen peroxide, Plaintiffs' counsel has made it crystal clear he intends to make the prescribing and filling of prescriptions for steroids a major issue in this case.

2

Plaintiffs have sought depositions and discovery from all Defendants. Given the implications of the pending criminal investigation, the Defendants ask the Court to issue a stay of this case or, in the alternative, a stay of discovery. As shown herein, such a stay is appropriate and necessary to protect the Defendants, and secure justice, and will not burden Plaintiffs or the Court.

### III.     STATEMENT OF LAW

### THE COURT HAS INHERENT AUTHORITY TO STAY PROCEEDINGS AND COURTS ROUTINELY ISSUE STAYS IN CIVIL MATTERS THAT ARE ALSO THE SUBJECT OF RELATED CRIMINAL PROCEEDINGS

The Court is vested with the inherent authority to stay its proceedings. *Landis v. North American Company*, 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936). This Court may decide in its discretion to stay civil proceedings or to postpone civil discovery wherever the "interests of justice seem…to require such action…." *SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1375 (D.C.Cir. 1980) (quoting *United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970) (citations omitted). The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made in light of the particular circumstances and competing interests involved in the case. *Dresser* at 1375.

In deciding whether to enter a stay in a civil action pending the resolution of a criminal prosecution, courts generally consider 6 factors:

> (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest.

*See,* for example, *Javier H. v. Garcia Botello,* 218 F.R.D. 72, 74 (W.D.N.Y. 2003); *Walsh Securities, Inc. v. Cristo Prop. Mgmt, Ltd.,* 7 F. Supp.2d 523, 527 (D.N.J. 1998); *See also Dresser; Keating v. Office of Thrift Supervision,* 45 F.3d 322 (9th Circuit).

### A. Plaintiffs' counsel has assured everyone in no uncertain terms that he intends to make the issue being investigated by the U.S Attorney an issue in the civil case.

The similarity of the issues underlying the civil and criminal actions is often considered one of the most important threshold issues in the determination of granting a stay. *Walsh Securities,* 7 F. Supp.2d at 527 citing Milton Pollack, *Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201, 203 (1989). The Complaint initiating this suit makes out allegations of inappropriate administration of hydrogen peroxide by Shortt, and inappropriate "filling and dispensing" only of hydrogen peroxide for intravenous ingestion by Congaree without providing appropriate "pharmacy care" and alleged other failures. (Complaint ¶¶ 18 and 19). Defendants strenuously contend that the prescribing and dispensing of other drugs to other patients is wholly irrelevant to this case. However, Counsel for Plaintiffs has made it clear through words and papers filed with this Court that he will "fully explore" and make issue in this case of evidence that Plaintiffs believe illustrates inappropriate administration of anabolic and other steroids and inappropriate filling and dispensing of anabolic and other steroids to athletes. He characterizes the case as follows:

> Plaintiff's claims in this action focus both specifically on the negligent and unprofessional conduct of Defendants in providing Ms. Bibeau intravenous hydrogen peroxide and broadly on the practices and procedures of Defendants in utilizing sham, illegal and/or fraudulent medical methods and treatments on their often desperate and vulnerable patients. These highly dubious practices include such medical shams as ordering obviously invalid and unapproved lyme disease tests from an unlicensed Florida laboratory to justify expensive and unneeded prescriptions and treatment; guiding a desperate patient to an illegal and potentially

4

> fatal black market drug, Laetril; and prescribing dangerous and illegal steroids, needles and syringes to body builders and professional athletes.

(See Plaintiffs' Memorandum in Opposition to Motion for Protective Order, p. 2).

The alleged "illegal" prescribing and filling of prescriptions for steroids to athletes is the subject of an ongoing grand jury investigation of which Shortt and one or more Congaree Defendants are the targets. Given the fact that Plaintiffs intend to place the steroid issue at the forefront of the civil litigation, there can be no doubt that there will be considerable overlap and similarity of issues in the civil and the criminal cases.

### B.     The status of the criminal proceedings favors a stay.

The strongest case for a stay is where an indictment has been issued. *Walsh Securities* at 527. However, each case must be evaluated individually, and the court must make its determination in light of the particular circumstances of the case at hand. *Dresser*, 628 F.2d at 1375. A strong case is presented when the Government is conducting an active parallel criminal investigation; has executed search warrants; issued subpoenas; and the civil defendants have been informed that they are targets of the ongoing criminal investigation. *Walsh Securities*. In *In Re: Grand Jury Proceedings*, 836 F.2d 1468 (4th Cir. 1988), the Court of Appeals specifically suggested staying discovery in a civil case while a grand jury investigation was under way, even though no indictment had been issued:

> One commonly used alternative to allay the fears of a deponent is to delay discovery until a pending grand jury investigation has been completed. *See Shaffer v. United States*, 528 F.2d 920, 922 (4 Cir. 1975) (stating a preference for stays in such cases). Such a stay, which was denied by the Virginia district court in this case, has the salutary effect of minimizing the conflict between criminal investigations and fair discovery in civil litigation.

*Id.* At 1476.

5

In *Shaffer, supra*, the Fourth Circuit held that a tax collection proceeding (a civil proceeding) should be stayed until the Government either obtained immunity for the taxpayer under investigation or the criminal proceedings concluded; no indictment had been issued. *Shaffer v. United States of America*, 528 F.2d 920, 922 (4th Cir. 1975). The Second Circuit and district courts in the Second Circuit have considered the issue of a stay when parallel proceedings are involved on numerous occasions, and in the cases where the proceedings were at the same stage as they are here the Second Circuit has found district courts exercised sound discretion in staying a civil case until the U.S. Attorneys' office has completed its investigation. See *Kashi v. Gratos*, 790 F.2d 1050, 1057 (2d Cir. 1986); Also see *Walsh*.

The criminal investigation targeted at these Defendants is at a critical stage that, given the danger of harm and prejudice to the Defendants that will be discussed below, dictates that the civil case be stayed.

### C.    Mere brief delay in discovery and proceedings is not sufficient to establish prejudice to Plaintiffs by the stay.

When assessing the burden that may result to a plaintiff from the stay, courts will look for a plaintiff to establish more prejudice than simply a delay in the right to pursue a claim. *See Maloney v. Gordon* CA No. 03-999-KAJ, p 7-8 (Del. July 27, 2004) (copy attached as Exhibit B). Delays in civil cases are fairly common. *Walsh Securities* at 528. There is no evidence that any of the Defendants are trying to leave the country or otherwise gain an unfair advantage by seeking a stay. *Id.*

Plaintiffs can show no prejudice beyond mere delay, which is insufficient to prevent the entering of the stay. *Maloney; Walsh Securities.* This factor favors a stay.

6

**D.     Without a stay the Defendants will suffer great harm.**

In deciding whether to stay civil proceedings, the Court should consider the extent to which the Defendants' fifth amendment rights are implicated. *Dresser* 628 F.2d at 1376; *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324-325 (9th Cir, 1995). The civil proceedings, if not deferred, will undermine the Defendants' fifth amendment privilege against self incrimination. *Dresser*. The depositions of the Defendants have been noticed by Plaintiffs' counsel.

It would be unfair, in the circumstances of this case, to force Defendants to choose between testifying and invoking the fifth amendment. A party to a civil action has the right to assert the privilege until immunity is granted. *In re Grand Jury Subpoena*, 836 F.2d 1468, 1471 (4th Cir. 1988) citing *Pillsbury Co. v. Conboy,* 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). However, "the fifth amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *In re Grand Jury Subpoena*, 836 F.2d at 1472 quoting *Baxter v. Palmiagiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 10 (1976). If the civil action is not stayed and the Defendants are forced to undergo depositions and written discovery on the steroid issue or issues of other allegedly illegal activity, Defendants will be faced with a "Hobson's choice"; they can either refuse to answer questions pursuant to their fifth amendment right and face an adverse inference that could potentially result in a financially devastating judgment, or answer questions and potentially implicate themselves in a criminal proceeding. It would be a gross oversimplification to say that the Defendants should give their depositions and testify as to nonincriminatory matters and invoke their fifth amendment privilege as to incriminatory matters. The privilege applies "if a response might provide a clue leading investigators to discover facts that could constitute links to

a chain of circumstantial evidence proving criminal misconduct." *In Re: Grand Jury, supra*, 836 F.2d at 1473, citing *Hoffman v. United States*, 841 U.S. 479, 71 S.Ct. 814 (1951). The federal grand jury proceedings are secret, so the Defendants do not know the charges that might be made against them or, of course, the elements of those charges. Therefore, they have no way of knowing what testimony might be exculpatory and what testimony might be incriminating. Moreover, the Defendants cannot selectively waive the fifth amendment. If they answer any questions, they might be deemed to have waived their fifth amendment privilege as to the entire subject matter. *Rogers v. United States*, 340 U.S. 367 (1951). Some courts might even hold that a waiver of the fifth amendment in this civil case constitutes a waiver in the criminal case. *See Walker v. Lockhart*, 763 F.2d 942 (8th Cir. 1985). *Contra, United States v. Gary*, 74 F.3d 304 (1st Cir. 1996).

In addition, depositions and additional written discovery may expand criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of a criminal trial, or otherwise prejudice the case. *See Dresser; See also Walsh Securities.* Plaintiffs' counsel has already shown a propensity to divulge information obtained through discovery to the media and proclaimed a duty to do so, and has expressed not only to defense counsel but to this Court at the hearing on the Motion for a Protective Order his desire to assist in the criminal prosecution of the Defendants.

Based on these considerations, a party who is the target of a criminal investigation is practically forced to invoke the fifth amendment in response to every substantive question, regardless of his innocence of any crime. For these reasons the burden and harm on the Defendants if the civil case is not stayed favors delaying the civil proceedings until the criminal proceedings have been concluded.

### E. The interests of the Court favor granting the motion for stay.

A stay will promote the interests of justice and judicial efficiency. The stay will eliminate the need for the Court to expend its resources making decisions regarding potential discovery disputes involving issues that may impact the criminal matter. *Walsh Securities,* 7 F. Supp.2d at 528, *Javier II.* 218 F.R.D. at 75. As demonstrated above, the stay protects Defendants' rights. It also eliminates any potential for any exercise of fifth amendment rights to frustrate Plaintiffs' access to evidence in this case. In addition, the result of the criminal trial might yield transcripts and sworn testimony that may serve to simplify the issues with which the Court must address in the civil action. Consequently, the stay in this case serves the interests of justice and will conserve scarce judicial resources.

### F. A stay is in the public interest.

If delay of the civil proceeding would not seriously injure the public interest, a court may be justified in deferring the action. *Dresser,* 628 F.2d at 1376, citing *Untied States v. Henry,* 491 F.2d 702 (6th Cir. 1974); *Texaco, Inc. v. Borda,* 383 F.2d 607 (3d Cir, 1967); *Silver v. McCamey,* 221 F.2d 873 (D.C. Cir. 1995). Here, there is no harm to the public interest in granting the stay sought in the civil case. *See Walsh Securities,* 7 F. Supp.2d at 529. Quite the contrary, the stay sought in this case will benefit the public by allowing the criminal prosecution to proceed expeditiously while allowing Plaintiffs the opportunity for a full and fair trial against the Defendants after the criminal proceedings are concluded.

The Motion for Stay should be granted.

## IV.     CONCLUSION

These Defendants are the targets of a federal grand jury investigation. The subject of the investigation is reported to be the prescribing and filling of prescriptions for steroids for inappropriate purposes, for which these Defendants adamantly deny any criminal culpability. However, counsel for Plaintiffs has indicated in absolute terms that he intends to make steroids a major issue in this civil case. If discovery is allowed to continue in the civil case the Defendants will be forced to assert fifth amendment privileges; the government will be allowed access to discovery not allowed under the criminal procedural rules; and the Government may potentially obtain a road map to the defense theories before the criminal trial takes place. All factors favor staying the civil proceedings until the criminal proceedings have been concluded. The Defendants jointly request that the entire civil case be stayed or, in the alternative, a stay of discovery be issued.

Respectfully Submitted,

BARNWELL WHALEY
PATTERSON & HELMS, LLC

s/ James H. Elliott, Jr.
M. Dawes Cooke, Jr. (Fed ID #288)
James H. Elliott, Jr. (Fed ID #7043)
Jay Jones (Fed ID # 9479)
885 Island Park Drive (Zip: 29492)
P.O. Drawer H
Charleston, SC  29402
(843) 577-7700
mdc@barnwell-whaley.com
jelliott@barnwell-whaley.com
jjones@barnwell-whaley.com
*Attorneys For Defendants*
*Congaree Pharmacy, Inc.*
*George Dawn, R.Ph.*
*J. H. "Buster" Phillips, Jr., R.Ph.*

YOUNG CLEMENT RIVERS, LLP

 s/ J. Rutledge Young, Jr.

J. Rutledge Young, Jr. (Fed ID #

Joseph J. Tierney, Jr. (Fed ID #7368)
Young Clement Rivers, LLP
P.O. Box 993
Charleston, SC  29402
(843) 577-4000
*Counsel for James Michael Shortt,*

May 11, 2005